HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTOPHER VELTO, a Washington citizen,

Plaintiff,

v.

DRAEGER MEDICAL, INC., a Pennsylvania corporation; SALUS SURGICAL GROUP, LLC, a Delaware Limited Liability Company; and CENTURY CITY DOCTOR'S HOSPITAL, LP, a Delaware Limited Partnership,

Defendants.

Case No. C06-5190RBL

ORDER

THIS MATTER is before the Court on Defendant Draeger Medical, Inc.'s Motion for Summary Judgment [Dkt. #31]. The Court has considered the motion and supporting declarations, the response and supporting declarations, and the reply and supporting declaration, together with the entirety of the records and file herein. For the reasons stated, defendant's motion is **DENIED**.

**I. CLAIMS AND CHOICE OF LAW**

Plaintiff's Third Amended Complaint contains three claims: (1) wrongful termination in violation of public policy - retaliation for complaining about unsafe working conditions (as to Draeger Medical); (2) outrage (as to all defendants); and (3) wrongful termination in violation of public policy - retaliation for filing a worker's compensation claim (as to Draeger Medical). Defendants Salus Surgical Group and Century City Doctor's Hospital have not filed an answer or otherwise appeared, and default has been

entered as to Century City Doctor's Hospital. The Court has subject matter jurisdiction over this action based upon diversity of citizenship. The parties agree that California substantive law applies. Draeger Medical seeks summary judgment as to all three of plaintiff's claims.

## II.  FACTS[1]

Plaintiff, Christopher Velto, was hired as Western Region Project Manager for Draeger Medical in July, 2004. Draeger Medical sells medical equipment and designs, installs and services complex medical monitoring and information management systems. The position's duties included reviewing sales orders, scheduling installations, and dealing with the customers and internal Draeger Medical staff. Prior to going to work for Draeger Medical, plaintiff was a Senior Field Engineer for GE performing essentially the same duties. The project manager job, however, did require more customer involvement than his field engineer position with GE.

In late 2004, Velto was assigned as the project manager at Providence Healthcare Hospital in Anchorage, Alaska. The project was relatively uncomplicated and was worth approximately $300,000 to Draeger Medical. His next assignment began in early 2005 and was as project manager at Century City Doctor's Hospital ("CCDH") in Los Angeles, California. By all accounts this project was very large, very complicated and was worth approximately five million dollars to Draeger Medical. One, if not the, complicating factor was that CCDH was undergoing major construction as plaintiff was attempting to manage the installation of Draeger Medical's system.

Plaintiff's first evaluation as a Draeger employee came five months after he was hired. His then supervisor, James Merola, noted that "his limited work with clients has been well received and the word from the sales organization is that he has been responsive to them and knowledgeable in his discussions with clients." (Amended Declaration of Christopher Lundberg, Exh. 4, Dkt,. #45 ("Lundberg Decl. Exh. ___.")) At about this time, Rick Rowe became plaintiff's supervisor. Also, at about the same time plaintiff was assigned to and began working on the project at CCDH, Rowe reviewed the customer satisfaction survey from Providence Healthcare. The survey responses indicated dissatisfaction with

---

[1] The facts must be considered in the light most favorable to the plaintiff. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Due to the existence of material facts in dispute, this factual recitation is not intended to be comprehensive. Many other facts exist, but are not relevant to this Court's decision on summary judgment.

ORDER
Page - 2

Velto. Providence indicated that "[h]e was non-communicative, often making unilateral decisions without informing us of them." (Lundberg Decl., Exh. 6.)

The fact that the CCDH site was undergoing major construction caused many problems between plaintiff and Draeger and plaintiff and CCDH staff. Plaintiff believed that the CCDH job site was not ready for the installation of Draeger's sensitive medical monitoring equipment. He communicated this to the customer and to his supervisors. Despite the risk to the equipment, CCDH still demanded that the equipment be installed. Rowe met with CCDH staff and informed them of the risks and CCDH agreed that if the equipment gets damaged, Draeger would not be held responsible for the damage. (Lundberg Decl., Exh. 5, Deposition of Rich Rowe, p. 114, "Rowe dep.")

Plaintiff also complained to Draeger about the working conditions at CCDH. In an email to Rowe dated April 21, 2005, plaintiff stated '[t]he working conditions at CCDH are unacceptable, with the dust, asbestos, heat, fumes from welders and the lack of ventilation, I am starting to cough up blood in the mornings and have a constant headache all day and throughout the nights, something needs to be done to correct this situation . . . . It is unhealthy for Draeger employees . . .." (Lundberg Decl., Exh. 10) On July 14, 2005 and early August, 2005, plaintiff sent more emails complaining about the lack of ventilation and air conditioning in his work area. (Lundberg Decl., Exh. 11.) As a result of plaintiff's medical condition, and on the advise of Velto's physician, Rowe allowed plaintiff to work offsite during the two to three weeks after his initial April complaint. He was required to attend meetings at CCDH during that time; however, the meetings were held in an area of the hospital where the effects of the construction were much less noticeable. Due to CCDH staff concerns, this arrangement did not last long, and plaintiff was soon required to be onsite regularly. (Rowe dep., pp. 121, 128-30.)

On April 29, 2005 plaintiff submitted a worker's compensation claim form to Draeger. It is disputed whether or not Draeger correctly communicated to plaintiff the procedures he must follow in order to be covered under the claim and whether or not plaintiff followed up on the claim. (Compare Declaration of Christopher Velto, para. 10, Dkt. #44 with Declaration of Carol Rickert, Exh. 3, Dkt. #34.) However, it is not disputed that Draeger's worker's compensation carrier did not pay the claim, but that plaintiff's medical bills were paid by his regular insurance plan through Draeger.

Staff at CCDH, including Joel Bergenfeld, CCDH's CEO, were not satisfied with plaintiff's performance as project manager. They were concerned with the pace of the installation and plaintiff's alleged inability to communicate and inform them of the status of the project. Apparently, plaintiff and Joel Bergenfeld did not relate well to each other. Plaintiff complained to his supervisors about Bergenfeld's allegedly rude and demeaning treatment of plaintiff, and Bergenfeld complained to Draeger management about plaintiff's performance as project manager. Christian Hauer, then Draeger's VP of Service, states in his declaration that he and Rowe met with plaintiff and "coached him on improving his communication with CCDH." (Declaration of Christian Hauer, para. 5, Dkt. #35.) Plaintiff, on the other hand, states in his declaration that he repeatedly went to Rowe with his complaints about Bergenfeld and was "urged . . . to just stick it out" and told that he "was doing a great job on the project . . .." (Velto Decl., para. 15.) He further declares that he was "shocked to find out that [he] was being fired because of what Draeger claimed were 'communication' issues." (*Id*, para. 16.)[2]

In late September 2005, Robert Tice, President of Draeger Medical, Christian Hauer, John Biekle, Western Regional Sales Manager, Pat McKeever, Director of Human Resources, and Richard Rowe met to discuss plaintiff's status with the company. As a result of that meeting, Hauer and Rowe decided to fire plaintiff. Pat McKeever took notes at the meeting. (McKeever Decl., para. 3, Exh. 1.) On the last page of the notes in the upper right hand corner appears the phrase "workers comp." Plaintiff was terminated from his employment on October 6, 2005.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is

---

[2] To the extent defendant's argument that plaintiff's deposition testimony contradicts his declaration as to the "communication" statement, it is not well taken. However, the argument that plaintiff's declaration contradicts his deposition testimony as to the statement that he "had no idea there were any questions about my abilities or performance as project manager at CCDH[ ]" is well taken. The Court will not consider this statement in determining the existence of disputed material facts. *Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266 (9th Cir. 1991).

ORDER
Page - 4

not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

## IV.  DISCUSSION

Plaintiff has two separate causes of action alleging wrongful termination in violation of public policy.  Thus, the Court must first determine if plaintiff's claims involve violations of public policy.  They do.  "An employer who fires an employee in retaliation for protesting unsafe working conditions violates fundamental public policy . . . ." *Barton v. New United Motor Manufacturing, Inc.,* 43 Cal. App. 4th 1200, 1205 (Cal. App. 1996).  An employer who fires an employee in retaliation for asserting his rights to worker's compensation may be sued for common law wrongful termination. *City of Moorpark v. Superior Court*, 18 Cal. 4th 1143, 1158 (Cal. 1998); Cal. Lab. Code §132a.

In wrongful termination cases California courts apply the burden shifting analysis as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[3]  Under *McDonnell Douglas,* plaintiff must first establish a prima facie case of retaliation.  The burden then shifts to defendant to "articulate some legitimate, nondiscriminatory reason" for the termination. *Id*., at 802.  If defendant meets this burden, then plaintiff bears the burden to prove that defendant's stated reason was pretext. *Id*., at 804.

In order to establish a prima facie case for retaliation, plaintiff must show (1) that he engaged in a protected activity, (2) that he was subject to an adverse employment action, and (3) that a casual link exists between the protected activity and the adverse employment action. *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (Cal. 2005).  The defendant does not challenge[4] the first two elements.  Rather, the thrust of defendant's argument is that plaintiff cannot meet the causation element as to either of the claims for wrongful termination.

---

[3] *See Nelson v. United Technologies*, 74 Cal. App. 4th 597, 613 (Cal. App. 1999).

[4] The defendant challenges procedurally the first element.  However, the plaintiff identified the public policy violated in his opposition brief.

ORDER
Page - 5

### A.     Claim One: Wrongful Termination – Working Conditions

Draeger Medical argues that plaintiff cannot establish that he was terminated in retaliation for complaining that the working conditions were unhealthy. Defendant argues that plaintiff's complaints about working conditions were too far removed in time from his termination to permit an inference of causation. "[I]n some cases, causation can be inferred from timing alone when an adverse employment action follows on the heels of protected activity." *Villarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002).[5] Draeger argues that plaintiff last complained about working conditions in April, 2005. However, in an email in early August, plaintiff complained about working in an area without ventilation and air conditioning and stated "Please make sure that we have proper ventilation, cooling, power and LAN connectivity to DC2." (Lundberg Decl., Exh. 11.) Defendant argues that this email is not about employee working conditions as to safety or health, but about installation conditions. Plaintiff argues this email is evidence that he complained about working conditions as recently as two months before he was terminated, thus permitting an inference that causation existed. The meaning and effect of plaintiff's August email is a material factual dispute. Taking the facts and inferences in the light most favorable to plaintiff, the causation element of plaintiff's prima facie case has been met.[6]

The defendant must next come forward with legitimate nondiscriminatory reasons for the termination. Draeger Medical has supplied declarations which set forth its reasons to terminate plaintiff. The declarations support Draeger's position that plaintiff was terminated for poor performance and lack of communication skills. They have met their burden.

Plaintiff disputes Draeger's proferred reasons. His declaration indicates that he was told by his supervisor that he was doing a good job and disputes that he was aware of "communication issues" at CCDH. Thus, a disputed issue of material fact exists as to plaintiff's job performance as a reason for his termination. The existence of this factual dispute precludes summary judgment as to plaintiff's first claim for relief.

---

[5]California courts look to federal law when deciding employment discrimination cases. *See Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317 (Cal. 2000).

[6]Defendant also argues that plaintiff in his deposition testifies that he has no basis other than "speculation" as to why Draeger terminated him. Plaintiff's testimony is not a model of clarity on this point and may be fertile ground for cross-examination. The testimony does not stand alone, however, and cannot be the sole basis for dismissing this action. The other facts and circumstantial evidence of causation are also relevant.

ORDER
Page - 6

### B.  **Claim Three: Wrongful Termination – Worker's Compensation**

Draeger Medical argues that plaintiff cannot establish that he was terminated in retaliation for filing a worker's compensation claim. Plaintiff argues that the notes by Pat McKeever taken at the meeting to discuss the status of plaintiff's employment are evidence of causation. The notation "workers comp." on page four of those notes could be evidence of bias on the part of the decision-makers. Notwithstanding Ms. McKeever's declaration stating that she was not a decision-maker and that she would have prepared that note after the meeting and not as a contemporaneous record of the discussion, a jury, not this Court, determines the credibility of witnesses. The circumstances surrounding the making of that note and its meaning are material, and are in dispute. Thus, plaintiff has established the causation element of his prima facie case.[7]

As stated in Sect. III.A., defendant has come forward with legitimate nondiscriminatory reasons for plaintiff's termination. The same factual dispute as to causation is also relevant as to pretext. A reasonable jury could find that plaintiff's filing of a worker's compensation claim was a motivating reason for his termination and that he was not fired solely based upon his performance and lack of communication with CCDH staff. (*See* Judicial Council of California Civil Jury Instruction 2430, for the causation element the plaintiff must prove that the violation of public "was a motivating reason" for plaintiff's discharge.)

### C.  **Claim Two: Outrage**

The elements of this claim are "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (Cal. 1991) (internal citation omitted.) "Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community. *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (Cal. 1982).

Plaintiff argues that Draeger Medical's conduct was outrageous because they ratified CCDH's harassment of plaintiff, they forced plaintiff to remain on a job site Draeger Medical knew was dangerous

---

[7] Plaintiff's deposition testimony that he is not making a claim for the way Draeger handled his worker's compensation claim is not dispositive. (Bernsten Decl., p. 26.) Other testimony in the deposition contradicts this lone statement. (See Bernsten Decl., pp. 54-59.) *See also* fn. 5.

to his health, they failed to properly report and follow up on plaintiff's worker's compensation claim, and they terminated his employment. The evidence as to this claim will be the same evidence produced to support plaintiff's wrongful termination claims. The existence of factual disputes as to that evidence precludes the entry of summary judgment as to plaintiff's outrage claim as well.

Therefore, defendant Draeger Medical's Motion for Summary Judgment [Dkt. #31] is **DENIED**. Draeger Medical's Motion to Strike contained in the reply brief [Dkt. #46] is also **DENIED.**

**IT IS SO ORDERED.**

Dated this 13th day of December, 2007.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE